710 So.2d 826 (1998)
Gerri S. BRASSEAUX,
v.
ALLSTATE INSURANCE COMPANY.
No. 97 CA 0526.
Court of Appeal of Louisiana, First Circuit.
April 8, 1998.
*827 James R. McClelland, Franklin, for Plaintiff/Appellee Gerri S. Brasseaux.
C. Shannon Hardy, Lafayette, for Defendant/Appellant Allstate Insurance Company.
Before CARTER, FITZSIMMONS, JJ., and CHIASSON,[1] J. Pro Tem.
CARTER, Judge.
This is an appeal by Allstate Insurance Company (Allstate) from a default judgment in favor of plaintiff and against defendant in the amount of $30,000 in damages and $60,000 in penalties, for failure to a pay a settlement within thirty days of the settlement being reduced to writing.

FACTS AND PROCEDURAL HISTORY
Gerri S. Brasseaux (Brasseaux) was involved in an automobile accident on November 12, 1994, in St. Mary Parish. She was struck by Charles M. Peterson, Jr., an insured of Allstate. A lawsuit seeking damages from this accident was filed on behalf of Brasseaux on November 3, 1995. This suit was captioned, "Gerri Brasseaux vs. Charles Peterson, Jr., et al, docket number 96-605 Division H," in the Sixteenth Judicial District in St. Mary Parish. Trial on the merits was scheduled to begin on September 9, 1996. However, a verbal settlement was reached on September 6, 1996, between counsel for Allstate, Stacy Lee (Lee), and counsel for Brasseaux, James McClelland (McClelland).
On September 6, 1996, Lee faxed a letter to McClelland, confirming that the matter was concluded for a sum total of $45,000 plus court costs. The letter also indicated that the settlement figure included payment of a lien filed by Brasseaux's health insurer. The record does not contain any response by McClelland to this letter.
On October 30, 1996, Lee sent McClelland the settlement check, and the release agreements along with a motion for dismissal. Allstate requested Brasseaux's signature on the release and McClelland's signature on the dismissal. On October 31, 1996, Brasseaux signed the release agreement. By letter dated the same date, McClelland returned the release and the signed motion for dismissal. McClelland also informed Lee that the settlement check was deposited in his trust account, and that the funds would be disbursed to his client once the check cleared.
Meanwhile, on October 11, 1996, McClelland had filed a "Petition to Enforce Settlement, and for Damages and Penalties." However, this pleading was filed as a separate suit, not as a pleading in Brasseaux's suit for personal injuries arising out of her November 12, 1994 accident.
On November 6, 1996, after Brasseaux had signed the release agreement and McClelland had signed the motion to dismiss the personal injury suit, andafter McClelland deposited the settlement proceeds into his trust account, McClelland filed a motion for preliminary default against Allstate in the suit seeking enforcement of the settlement. On November 15, 1996, McClelland confirmed the default judgment against Allstate *828 for a total of $90,000 plus interest and court costs. The judgment was divided into $30,000 for damages and $60,000 for penalties.
Allstate filed a motion for new trial on November 27, 1996, which was denied on December 3, 1996. A petition for appeal was filed on December 18, 1996. Allstate sought supervisory writs from the denial of its motion for new trial; however, on February 21, 1997, this court denied Allstate's writ since the judgment complained of had become a final, appealable judgment.
Allstate assigns the following assignments of error:
I. The trial court erred by granting judgment to plaintiff because there was not sufficient evidence establishing a prima facie case to allow the confirmation of a default judgment of a Petition to Enforce Settlement when there was no evidence introduced in the form of reciprocal writings establishing a legally enforceable settlement.
II. The trial court erred by denying Allstate's Motion for New Trial as a new trial was warranted when the default judgment was confirmed and there is no evidence of a legally enforceable settlement and prior to the confirmation of the default judgment, the plaintiff receives the settlement funds and executes a Release of All Claims of the underlying cause of action.
III. When the underlying claim was resolved for $45,000 before the default judgment was obtained, the trial court erred by awarding Brasseaux $90,000 in damages and penalties pursuant to Louisiana Revised Statute 22:1220.
IV. The trial court erred in awarding any damages to Brasseaux pursuant to Louisiana Revised Statute 22:1220 because plaintiff failed to establish a viable cause of action.[2]

LAW
In order for a plaintiff to obtain a default judgment, he must establish a prima facie case with competent evidence, as fully as though each of the allegations in the petition were denied by the defendant. In other words, the plaintiff must present competent evidence that convinces the court that it is probable that he would prevail on a trial on the merits. LSA-C.C.P. art. 1702(A); Thibodeaux v. Burton, 538 So.2d 1001, 1004 (La.1989); Rhodes v. All Star Ford, Inc., 599 So.2d 812, 813 (La.App. 1st Cir.1992). In reviewing the default judgment, we are restricted to a determination of whether the record contains sufficient evidence to prove a prima facie case. Rhodes v. All Star Ford, Inc., 599 So.2d at 813; Dunaway v. Woods, 470 So.2d 574, 577 (La.App. 1st Cir.1985).
There is a statutory right to enforce a settlement and seek penalties when the settlement is not paid in a thirty day period. LSA-R.S. 22:1220 provides in pertinent part:
A. An insurer, including but not limited to a foreign line and surplus line insurer, owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
B. Any one of the following acts, if knowingly committed or performed by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
* * * * * *
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
In the instant case, for Brasseaux to prevail on a default judgment, there must be proof of a settlement which was not paid thirty days after such agreement was reduced to writing. A compromise is an agreement to adjust the differences of two or more persons by mutual consent for preventing or ending a lawsuit. Smith v. Leger, 439 So.2d 1203, 1205 (La.App. 1st Cir.1983). LSA-C.C. art. 3071, defines a compromise and sets *829 forth the requirements regarding compromises, as follows:
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court and capable of being transcribed from the record of the proceeding. The agreement recited in open court confers upon each of them the right of judicially enforcing its performance, although its substance may thereafter be written in a more convenient form.
While the statute itself does not provide for the consequences of failure to reduce a compromise agreement to writing, a compromise which is not reduced to writing is unenforceable. Felder v. Georgia Pacific Corp., 405 So.2d 521, 523 (La.1981). Further, the requirement that the agreement be reduced to writing necessarily implies that the agreement be evidenced by documentation signed by both parties. Felder v. Georgia Pacific Corp., 405 So.2d at 523; Anderson-Dunham, Inc. v. Hamilton, 564 So.2d 823, 828-29 (La.App. 1st Cir.), writ denied, 569 So.2d 963 (La.1990).
The Louisiana Supreme Court set forth in Bourgeois v. Franklin, 389 So.2d 358, 361 (La.1980):
La. Civ.Code art. 3071 is placed in the code to insure proper proof of extrajudicial agreements.... Inasmuch as there is no judgment on the merits outlining the obligations each party has to the other when a case is settled by the parties, the law has seen fit to require the compromise agreement, which sets out those obligations, to be reduced to writing to serve as proof of the agreement and the acquiescence therein. (Emphasis provided; citations omitted; footnote omitted.)
Obviously, to serve as written proof of the agreement and obligations of both parties and their acquiescence therein; the written agreement must be signed by both parties, obligating both to do what they have agreed on. Felder v. Georgia Pacific Corp., 405 So.2d at 523; Willett v. Price, 515 So.2d 477, 478-79 (La.App. 1st Cir.1987), writ denied, 516 So.2d 367 (La.1988).
Compromise is a bilateral contract. A letter by one of the parties setting forth their understanding of the agreement is not an agreement of the parties reduced to writing. Coleman on Behalf of Coleman v. Academy of Sacred Heart, 93-2015, p. 3 (La. App. 4th Cir. 3/29/94); 650 So.2d 265, 267; Scott v. Green, 621 So.2d 1, 3 (La.App. 4th Cir.), writs denied, 629 So.2d 1139 (1993).
However, the requirement that the agreement be in writing and signed by both parties does not necessarily mean that the agreement must be contained in one document. A written offer signed by the acceptor, even if the offer and the acceptance are contained in separate writings would be legally enforceable. In other words, where two instruments, when read together, outline the obligations each party has to the other and evidence each party's acquiescence in the agreement, a written compromise agreement, as contemplated by LSA-C.C. art. 3071, has been perfected. Felder v. Georgia Pacific Corp., 405 So.2d at 523-24; Anderson-Dunham, Inc. v. Hamilton, 564 So.2d at 829.
The petition to enforce the settlement alleged that the September 6, 1996 settlement was confirmed in writing as evidenced by Lee's letter of the same date. Although the petition stated the September 6, 1996 letter was attached to it, the petition appearing in the record does not have a copy of the letter attached. In reviewing the record, we note there is a copy of the letter in the record as an exhibit to Allstate's motion for new trial which also reflects a file stamp with the date of October 11, 1996, the date of the filing of the petition. Thus, we conclude the letter was before the trial judge at the confirmation hearing.
On November 15, 1996, the confirmation hearing was held. There is no transcript of the proceeding in the record. However, there is a narrative of facts on behalf of Gerri S. Brasseaux, which was filed on January 29, 1997, which purports to describe what occurred *830 at the hearing. According to the narrative, Brasseaux testified regarding the way the accident happened, the injuries she and her daughter, Brittany, sustained, and her lost wages. In addition to Brasseaux's testimony, the following exhibits were introduced into evidence: (1) the accident report dated November 12, 1994; (2) an invoice from Pilant Court Reporting, Ltd. for $177.20; (3) an invoice for A-Legal Video Services in the amount of $275.00; and (4) a settlement demand letter dated May 17, 1996, from McClelland to Lee offering to settle the matter for $104,350.58. Brasseaux also testified regarding each exhibit. There is no evidence that the trial judge was informed at the confirmation hearing that Allstate had already paid $45,000 and that Brasseaux had signed the release agreement two weeks earlier.
Brasseaux alleges the September 6, 1996 letter was the written agreement which started the thirty day period contemplated in LSA-R.S. 22:1220(B)(2). According to the narrative, after this settlement was confirmed in writing, McClelland informed his client that settlements must be paid within thirty days. Brasseaux, who had borrowed $8,550.88 to pay outstanding medical bills then notified her lender to expect payment within thirty days. However, when thirty days passed with no check, Brasseaux could not satisfy her lender. The substance of Lee's September 6, 1996 letter is as follows:
Dear Mr. McClelland:
This will confirm that we have concluded the captioned suit for a sum total of $45,000, plus court costs. This will also confirm that this figure includes the lien by Ms. Brasseaux's health insurer. It will be included on the check.
 With kindest regards, I remain
 Very truly yours,
 S/ Stacy Lee
The record does not reflect McClelland ever responded in writing to Lee's September 6, 1996 letter. At the confirmation hearing, there was no evidence introduced by plaintiff that could be construed as a written acceptance of the $45,000 settlement. We cannot construe McClelland's May 17, 1996 settlement proposal with Lee's September 6, 1996 letter to evidence the written settlement because there is no complete written agreement as to the terms, and the amount offered is different from the amount accepted.
In reviewing the evidence introduced at the confirmation hearing, we cannot say Brasseaux proved a prima facie case that there was a settlement agreement which had been reduced to writing. Brasseaux's reliance on Lee's September 6, 1996 letter is misplaced because this letter standing alone does not meet the requirements of an agreement reduced to writing in order to begin the thirty day time period for payment of the settlement under LSA-R.S. 22:1220. See Coleman on Behalf of Coleman v. Academy of Sacred Heart, 650 So.2d at 267; Scott v. Green, 621 So.2d at 3.
Under the jurisprudence, this cannot be considered an agreement of the parties reduced to writing. Because Brasseaux did not prove the existence of a settlement which had been reduced to writing, we find the trial court erred in allowing the confirmation of the default judgment against Allstate. In our opinion, the settlement was not perfected until October 31, 1996, when McClelland responded to Lee's October 30, 1996 letter, by returning the signed documents and notifying Lee he had deposited the settlement proceeds in his trust account. These signed documents, when read together, outline the obligations of each party and each party's written acquiescence in the agreement.

CONCLUSION
Because we find the complete settlement was not reduced to writing until October 31, 1996, we find Brasseaux's petition to enforce the settlement and request for penalties is without merit. Brasseaux did not make out a prima facie case that a written settlement existed. The judgment of the trial court awarding $90,000 in damages and penalties to Gerri Brasseaux is reversed. All costs of this appeal are assessed against Gerri Brasseaux.
REVERSED.
NOTES
[1] Judge Remy Chiasson, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] Although this opinion does not address each assignment of error individually, it disposes of all issues.